RECEIVED
5/1/2025 BI
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States
District Court

Paul Olsson )
plaintiff )
v. ) Case No:
Richard Malis )
Patrick Corcoran )
Tahseen Mohammed )
Syed Hussein ) Judge:
Jennifer Matthews )
Rachel Nelson )
Carrie schmidt )
Unknown Defendants )
Tom Zubik Defendants )
Michelle Evans

1:25-cv-05085
Judge Manish S. Shah
Magistrate Judge Young B. Kim
PC 1
Direct

## Verified Complaint

Now Comes Paul Olsson ("Plaintiff") and submits the instant Verified Complaint

## Jurisdiction + venue

1. Plaintiff invokes 42 U.S.C. 1983 insofar Defendants are state Actors and violated Plaintiff's Constitutional Rights

2. Venue is Appropriate since all Acts and omissions Occured within Territorial Boundaries of the Court

Parties

3 Plaintiff is a citizen of the United States and currently Resides at the Lake County Jail

4. Patrick Corcoran is employed by Department of Human services as Medical Director.

5. Richard Malis is employed by the Department of Human services as a Psychiatrist

6. Tahseen Mohammed is employed by the Department of Human Services as a Psychiatrist

7. Syed Hussein is employed by the Department of Human services as a Psychiatrist

8. Jennifer Matthews is employed by the Department of human services as a social worker

9. Rachel Nelson is employed by the Department of Human Services as a Social Worker

10. Carrie schmidt is employed by the Department of Human services as a Psychiatrist

10-1 Michelle Evans and Tom zubik worked at EMHC as Hospital Administrator and Program director respectively.

11. Plaintiff asserts that there are Multiple unknown Defendants who Actively Participated in the complained of Acts

## Statute of limitations

12. while it Appears that an argument can be Made that claims Relating to Plaintiff's carpal tunnel syndrome are too late, Plaintiff asserts it is Part of a Pattern and Practice by named Defendants to deny Medical Treatment and be deliberate indifferent.

13. Thus, the Recent violations Regarding lack of Treatment of Plaintiff's diagnosed PedoPhilic disorder Tolls the statute for the carpal Tunnel claims.

14. The fact Pattern Demonstrates Consistent and Pervasive Violations of Plaintiff's fundamental Rights Relating To Medical Treatment

## Facts

15. Approximately June of 2022, Plaintiff was diagnosed with carpal tunnel syndrome by a doctor at Suburban orthoPedic

16. In the diagnosis and treatment instructions, the treating doctor reconmended Plaintiff be allowed access to a tablet for the Purpose of writing legal and Personal documents

17. Upon Returning to the Elgin Mental Health Center, Plaintiff spoke with his assigned Medical Doctor Dr. sheikh. Plaintiff discussed the tablet Recommendation and Dr. sheikh agreed with it and informed Plaintiff he would contact "Administration"

18. Approximately one week later, Dr. Sheikh told Plaintiff that he was advocating for Plaintiff but Administration was Resistant.

19. Plaintiff asked Dr. sheikh who specifically he was talking to in administration. Dr. Sheikh Refused to answer

20. Two weeks after the exchange described in Paragraph 19, Plaintiff was informed by Dr. sheikh that the Hospital Possessed a word Processing Machine and he was asking that administration Provide it for Plaintiff.

21. Plaintiff Never Received the word Processing Machine.

22. Plaintiff wrote multiple grievances Regarding the EMHC's failure to Provide him with a Tablet or Medically Acceptable Alternative

23. Plaintiff spoke with members of his Treatment Team and unit staff regarding the status.

24. Dr. Sheikh and Multiple other EMHC staff members suggested that Plaintiff "stop sueing" the EMHC, suggesting the writing of lawsuits is Creating the Carpal Tunnel

25. These suggestions by EMHC staff suggests to Plaintiff that his Medical Treatment was denied due to his engagement in litigation against the EMHC

26. Plaintiff is unable to investigate and learn which DHS employees were involved in the denial of treatment Regarding Plaintiff's carpal tunnel diagnosis

27. It appears that if Plaintiff was Not Actively involved in litigation against the DHS, he would have received a therapeutically Acceptable alternative to compose his documents

28. Approximately August of 2012, Defendant Malis diagnosed Plaintiff with Pedophilic disorder and recommended Plaintiff be civilly committed. Defendant is not licensed by the Illinois sex offender Management board

29. Upon diagnosing Plaintiff, Defendant Malis failed or Refused to explain the diagnosis to Plaintiff, answer any questions or discuss Treatment.

30 Malis never offered sex offender treatment to Plaintiff nor discussed treatment options

31. Malis' conduct, or lack thereof, constitutes Human warehousing insofar that Plaintiff was civilly committed to a Mental Hospital without Treatment

32. Malis committed federal funding fraud by enabling the collection of federal funds for Plaintiff's commitment without intending to Provide Treatment for Plaintiff.

33. If Plaintiff was adequately and fully informed of his diagnosis he would have fully engaged in a treatment Program. Until recently, Plaintiff remained ignorant of the implications of the diagnosis and treatment Modalities

34. From 2015 to 2017, Plaintiff resided on the "M" unit where Defendant unknown Psychiatrist was Plaintiff's assigned Psychiatrist

35. This unknown Defendant continued to diagnose Plaintiff with Pedophilic disorder.

36. This unknown Defendant failed and refused to explain the Diagnosis to Plaintiff, answer questions Plaintiff may Have, Prescribe or offer treatment or explain the benefits of treatment

37. During the course of the two years that Defendant unknown Psychiatrist was "treating" Plaintiff, he testified Multiple times in court which Resulted in Plaintiff's continued involuntary commitment due to the Pedophilic disorder Diagnosis

38. from 2017 to 2020, Plaintiff was housed in a unit where Defendant Tahseen Mahammed was Plaintiff's assigned Psychiatrist

39. Defendant Mohammed continued to dignose Plaintiff with PedoPhilic disorder. This Defendant failed and refused to explain the Diagnosis to Plaintiff, answer questions Plaintiff may have, Prescribe or offer treatment or explain the Benefits of Treatment

40. During this three year Treatment Period, Defendant Mohammed testified Plaintiff should be involuntarily committed Based upon Plaintiff's diagnosis of Pedophilic disorder

41. Plaintiff is not invoking this court's jurisdiction to interfere with or overturn state Court Proceedings or orders. This complaint is Purely related to unconstitutional Conditions of confinement

42. from the years 2020 to 2021 and from 2022 to 2023, Defendant Syed Hussein was assigned as Plaintiff's treating Psychiatrist

43. Defendant Hussein continued to diagnose Plaintiff with Pedophilic disorder during the time he was assigned to Plaintiff's case

44. Defendant Hussein never explained the diagnosis to Plaintiff, answered any questions Plaintiff may have had, Prescribed or offered any treatment or explained the benefits of treatment

45. In 2023, Plaintiff began understanding the benefits of treatment and that treatment Modalities are Recommended for individuals Diagnosed with Pedophilic disorder

46. Plaintiff informed Defendant Hussein that he wanted to engage in a sex offender Treatment Program. Defendant Hussein did not Provide Plaintiff with Treatment or make Reasonable efforts to arrange for Plaintiff to Receive treatment

47. Defendant Schmidt was assigned as Plaintiff's Treating Psychiatrist from 2003 until Plaintiff's discharge in 2004.

48. During the time Defendant Schmidt was Plaintiff's assigned Psychiatrist, Plaintiff made Multiple Verbal and written Requests for Treatment.

49. Plaintiff's written requests for treatment were done on Consumer Complaint forms which is the alleged grievance system at the EMHC.

50 Defendant denied Plaintiff's requests for sex offender Treatment. Specifically, Defendant schmidt told Plaintiff "You can receive treatment when you are Released".

51. Plaintiff's written Requests were either ignored or denied by Defendants including but not limited to Rachel Nelson

52. from 2023 to 2024, Defendant Rachel Nelson was Plaintiff's assigned social worker.

53. On information and belief, Rachel Nelson is licensed by the sex offender management board to treat sex offenders

54. Shortly after hearing a Rumor that Rachel Nelson is licensed to treat sex offenders, Plaintiff asked Defendant Nelson if she was licensed to Treat sex offenders

55. Defendant Nelson denied being licensed to treat sex offenders. Plaintiff explained to Defendant Nelson That he is Requesting sex offender Treatment and was hopeful she was licensed.

56. Plaintiff submitted a grievance asserting that Defendant Rachel Nelson lied to the Plaintiff Regarding her Professional qualifications.

57. Plaintiff received a Response to his grievance signed by Rachel Nelson asserting she was confused by Plaintiff's question and clarified that she was licensed to Provide sex offender Treatment

58. On information and belief, Defendant Nelson lied to Plaintiff in order to evade any Request for Treatment.

59. Despite the clarification, Defendant Nelson denied Plaintiff's requests for treatment. Defendant Nelson told Plaintiff he would receive Treatment when he is Released

60. from 2022 to 2023, Defendant Jennifer Matthews was Plaintiffs assigned social worker

61. Defendant Matthews received multiple Requests from Plaintiff for sex offender treatment. Defendant Matthews is unable to Provide treatment. However, this Defendant did not make Reasonable efforts To obtain Treatment for Plaintiff

62. Defendant Patrick Corcoran has been directly involved in Plaintiff's treatment at the EMHC Periodically from 2016 through 2023.

63. Defendant Corcoran attended multiple Monthly "staffing" Meetings wherein Plaintiff's treatment Plan was Reviewed

64 In 2019, Defendants Carcoran, Zubik, Tahseen Mohmmed, Plaintiff's social worker (Not named in the instant suit) and Plaintiff met to discuss strategies for securing Plaintiff's Release

65. In 2023, Defendants Corcoran, Jennifer Matthews and Syed Hussein met with Plaintiff regarding issues Plaintiff was having with Hussein and Matthews

66. By directly involving himself in Plaintiff's treatment, Defendant knew, should have known, and had a duty to know that Plaintiff should be offered sex offender Treatment and choose Not to direct members of Plaintiff's treatment team to Provide Plaintiff with sex offender treatment

67. As Medical Director throughout the State of Illinois, Defendant Corcoran had the obligation and duty to make Arrangements for Plaintiff to receive treatment but choose Not to

68. from 2010 to 2012 Defendant Tom Zubik was Plaintiff's assigned Social Worker,

69 Defendant Zubik worked in conjunction with Defendant Malice to diagnosis Plaintiff with Pedophilic disorder

70. After diagnosing Plaintiff, Defendant Zubik did Not explain The Diagnosis to Plaintiff, answer any questions Plaintiff may have or make Reasonable accomodations for Plaintiff to Receive Treatment

71. From 2019 to 2022, Defendant Zubik was the Director of the forensic treatment Program at the EMHC.

72. In his capacity as the director, Defendant Zubik met with Plaintiff multiple times to discuss strategies for Plaintiff to be released

73. Defendant knew that the EMHC's staff had a duty to Provide Plaintiff with treatment for his diagnosed mental illness but choose to turn a Blind eye

74. In 2013, Defendant Michelle Evans worked at the EMHC as a social worker.

75. Plaintiff Participated in Defendant Evans Therapeutic writing group on Wednesday Afternoon in the Program Building

76. from 2020 to Plaintiff's discharge in 2024, Defendant Evans was the Hospital Administrator for the EMHC

77. During her time as the Hospital Administrator, Defendant Evans directly involved herself with and familarized herself with Plaintiff's treatment

78. Defendant Evans knew, should have known, and had a duty to know that the EMHC was not Providing or offering treatment for Plaintiff's diagnosed mental illness.

79. Defendant Evans knew, should have known, and had a duty to know that the EMHC has a constitutional obligation to Provide Plaintiff with treatment.

80. During his time at the EMHC Plaintiff engaged in Tens of Thousands of hours of treatment. However, sex offender treatment or a medically Acceptable alternative was never Provided to Plaintiff or offered

80-1. Plaintiff suffered Physical injury as a direct Result of ~~[illegible]~~ Defendant's conduct

Count 1: Due Process violation
All Defendants

81. Plaintiff incorporates by Reference and sets forth verbatim Paragraphs 1-80

82. At all times relevant hereto, Plaintiff enjoyed the Constitutional right to treatment for his diagnosed medical issues

83 Orthopedic specialists Diagnosed Plaintiff with Carpal tunnel syndrome and specifically Prescribed Plaintiff be Provided an Alternative to Handwriting his legal and Personal Documents

84. Plaintiff's assigned Medical doctor at the EMHC agreed with the diagnosis and treatment Protocol and requested "Administration" Make Provisions for Plaintiff

85. Unknown Defendants violated Plaintiff's Right to Treatment. This Denial was knowing and reckless.

86. Denying Plaintiff his Prescribed treatment was Not objectively Reasonable.

87. All the named Defendants and unknown Defendants Knew, should have known, and had a duty to know that they have an ethical and Constitutional obligation to Provide or at least offer treatment to Plaintiff

88. Upon educating himself through independent sources, Plaintiff repeatedly asked for treatment from numerous Defendants Both verbally and in writing.

89. All of the named Defendants knowingly, willfully and recklessly refused to Provide or offer Treatment to Plaintiff

90. Not only does the complained of conduct fail the Objectively reasonable test, but it also shocks the conscience since these Defendants engaged in Human warehousing

91. These Defendants acted in joint concert with one another

91-1 In addition to compensatory Damages, Plaintiff is entitled to Punitive Damages

Count 2: Deliberate indifference
All Defendants

92. Plaintiff incorporates by reference and sets forth verbatim Paragraphs 1-91

93. At all times relevant hereto, Plaintiff enjoyed the Right to be free from deliberate indifference Regarding his Medical Needs.

94. Carpal Tunnel syndrome and Pedophilic disorder constitute great Medical Need in order to satisfy the first Prong

95. All the Defendants, Both known and unknown, were deliberately indifferent by Not Providing Plaintiff with medical treatment consistent with Acceptable standards of care

96. All Defendants acted in joint concert with one another

97. In addition to compensatory Damages, Plaintiff is entitled to Punitive Damages.

State Claim: IIED

98. Plaintiff invokes the Court's Pendent jurisdiction to hear state tort claims

99 Plaintiff incorporates by Reference and sets forth Verbatim Paragraphs 1-97

100 All Defendants Acted with full knowledge when they denied Plaintiff Medical Treatment

101 Denial of Medical treatment constitutes wanton disregard for Plaintiff's human Rights

102 Defendants knew, should have known and had a duty to know that denying Plaintiff Medical treatment will inflict emotional distress

103. Plaintiff suffered severe emotional distress as a Result of Defendant's Actions

104. Defendant's conduct is extreme and outrageous and lead to Plaintiff suffering Physical injury

## State Claim Negligence and NIED

105 Plaintiff incorporates by Reference and sets forth verbatim Paragraphs 1-104

106. All Defendants owed Plaintiff a duty of care Regarding his diagnosed Medical issues

107. All Defendants Knowingly and willfully Breached their duty to Plaintiff by refusing to treat him

108. This Breach of duty injured Plaintiff

109. Plaintiff suffered at the Hands of the Defendants

## Prayer for Relief

Plaintiff asks that this court enter a judgment in Plaintiff's favor and orders the following:

a) Declaratory and Injunctive Relief

b) Compensatory Damages in an Amount to be Determined

c) Punitive Damages

d) Any other Relief this Court deems just and equitable

## Verification

Plaintiff verifies on Pain and Penalty of Perjury that the Above statements of Fact are true and correct. Conclusory statements Are Made in Good Faith

Paul O

Paul Olsson

Paul Olsson
I.D. #118193
c/o Lake County Jail
P.O. Box 38
Waukegan, Illinois 60079

April 29, 2025

Office of the Clerk
United States District Court
U.S. Courthouse
219 S. Dearborn Street
Chicago, IL 60604

Re: Filing for New Case

Dear Clerk:

I am currently confined in the Lake County Jail in Waukegan, Illinois. I am proceeding in want of counsel. I wish to file the enclosed lawsuit, Civil Cover Sheet, and Application to Proceed Without Prepaying Fees.

I have included an original and one (1) copy of the below-stated documents for filing. Thank you for your kind and gracious assistance.

Very truly yours,

/s/ Paul Olsson, in want of counsel

Encl.: An Original and one (1) copy of:

1. PLAINTIFF'S VERIFIED COMPLAINT;
2. CIVIL COVER SHEET;
3. APPLICATION TO PROCEED WITHOUT PREPAYING FEES; and
4. VERIFIED MOTION FOR APPOINTMENT OF COUNSEL.

PRODUCTS
(224) 345 – 7701
OLSON LABS, INC.
301 W HINTZ RD
WHEELING IL 60090 – 5700

LTR 1 OF 1

SHIP TO:
CLERK'S OFFICE
(312) 435 – 5670
U.S. DISTRICT COURT
20 TH FLOOR – CLERK'S OFFICE
219 SOUTH DEARBORN STREET
CHICAGO IL 60604 – 1800

IL 606 9 – 04

UPS NEXT DAY AIR 1

TRACKING #: 1Z 15W A82 01 4773 1765

BILLING: P/P

WS 28.0.8 Zebra ZP 450 18.0A 04/2025

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
RRD R 1023

Visit UPS.com

**Apply shipping documents on this side.**

**Window Envelope**

Use this envelope with shipping documents printed from a laser or inkjet printer on plain paper.

Scan QR code to schedule a pickup

This envelope is for use with the following services: UPS Next Day Air® UPS Worldwide Express® UPS 2nd Day Air® UPS Worldwide Expedited®

...velope for: UPS Ground UPS Standard UPS 3 Day Select®

**Domestic Shipments**

- To qualify for the letter rate, UPS Express® envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express envelopes containing items other than those listed or weighing more than 8oz. will be billed by weight.

**International Shipments**

- The UPS Express envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.
- To qualify for the letter rate, the UPS Express envelope must weigh 8 oz. or less. UPS express envelopes weighing more than 8 oz. will be billed by weight.

**Note:** UPS Express envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

...g you for more than 110 years ... Parcel Service.®

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

...formation about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com
010195103 5/21 PAC United Parcel Service

Express

ups®

05/01/2025-4

U.S. DISTRICT COURT
219 S DEARBORN ST

CHICAGO IL 60604

P:RED S:TBLU I:318

311-1021

1Z15WA82014773 1765 1030

SAT08485 XLE 02-1 May 1 08:10:48 2025
US 6060 HIPPS 25.3.2 SATOLR